UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ronnie Johnson,

        Plaintiff,

v.

Brian Kozlowski, et al.,

        Defendants.

_____/

Case No. 09-13563

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [29]**

This matter is before the Court on Defendants Brian Kozlowski's and Steve
Thompson's motion for summary judgment on Plaintiff Ronnie Johnson's 42 U.S.C. § 1983
Fourth and Fourteenth Amendment claims that Defendants violated his rights to be free
from excessive force and right to medical attention.[1]  Plaintiff alleges that Defendants beat
him in a holding cell and then failed to provide him with the prompt necessary medical
attention that he required after the beating.  Because the Court must view the evidence in
the light most favorable to Plaintiff, it finds that Plaintiff's testimony and evidence has
created a genuine issue of material fact that withstands Defendants' motion for summary
judgment.  For the reasons stated below, the Court DENIES Defendants' motion for
summary judgment.

**I.**     **Facts**

_____

[1]At the hearing on February 9, 2011, Plaintiff and Defendants agreed to dismiss
Defendant Costanzo and Plaintiff also dismissed the unidentified Lawrence.

**A. The arrest**

On September 16, 2006, Macomb County Deputy Sheriff Amy Zmick was alerted to a disturbance at and dispatched to Faith Christian Church in Mt. Clemens, Michigan. (Defs.' Mot. for Summ. J., Ex. G, Zmick Arrest Report.)  When she arrived at the church, she saw Plaintiff screaming obscenities at a group of people, pointing at them, and moving towards them aggressively.  When  Plaintiff saw Zmick, he attempted to leave the scene. Zmick ordered Plaintiff to stop and place his hands on his head.  Plaintiff turned towards Zmick aggressively and yelled an obscenity at her.   She then removed her pepper spray and ordered him to turn around and place his hands on his head. He did so.  Zmick placed Plaintiff in handcuffs.  Around that time, two other officers arrived and helped Zmick take Plaintiff to her patrol car.  Plaintiff pulled away from her several times as she escorted him to her car.  Zmick patted Plaintiff down and told him to sit in the car.  Although he complied in part, by sitting in the car, he would not put his feet in the car and he became unruly when Zmick attempted to put his legs in the car and started kicking at Zmick's forearms. He yelled "I should have hit your bitch ass when I had the chance."  Zmick then sprayed Plaintiff with her pepper spray, to subdue him.  (*Id.*)   In the car, Plaintiff said that he was going to kill Zmick's family and also stated, "I'm going to kill you the first chance I get." (*Id.*)[2]

Zmick drove Plaintiff to the Macomb County Jail and turned him over to the booking staff.  (*Id.*)  In her report, she stated that Plaintiff became assaultive and combative with the booking staff, and because of his actions, the staff put Plaintiff in a restraint chair.  (*Id.*)

---

[2]Plaintiff corroborated Zmick's report at his deposition.  (Defs.' Mot. for Summ. J., Ex. B, Johnson Dep. at 130-139.)

2

When she dropped him off at the jail, she stated that Plaintiff did not have any visible injuries.  (Pl.'s Resp., Ex. 10, Zmick Dep. at 19-20.)

### B. Arrival at Macomb County Jail

The Macomb County Jail booking staff videotaped officers moving Plaintiff from the patrol car to the jail cell.  (Defs.' Mot. for Summ. J., Ex. H.)  As the Court views the tape, the tape shows three officers removing Plaintiff, handcuffed, from the patrol car.  The officers escort Plaintiff, who appears addled, into a jail cell.  The officers remove something from around Plaintiff's neck and then pat him down.  They then ask him to kneel all the way on the floor.  Plaintiff does so.  They tell him that they are going to take his handcuffs off and that he then needs to place his hands on the floor.  They tell him to relax, and then they remove his cuffs.  After the officers remove his handcuffs, Plaintiff kicks off his shoes, rolls to his side, and then spreads out on the floor.  The officers leave and tell him there is water in the toilet.

The tape then skips to a different scene.  There is no indication how much time elapsed from the first scene to this one.  Several officers are holding Plaintiff down and restraining him.  Plaintiff is either wearing handcuffs, or his hands are bound in some way. Officers then bring in a restraint chair.  The officers lift him up, limp, and place him in the chair.  The officers tell Plaintiff to "go with the program;" Plaintiff responds, "Ok."  The officers then secure Plaintiff in the chair.  Plaintiff repeats several times that he is cooperating or will cooperate.  The speaking officer tells Plaintiff that they are putting Plaintiff in the restraint chair for his own safety.  The speaking officer then tells someone to bring the nurse in to check Plaintiff.

3

The speaking officer tells Plaintiff that the officers will get Plaintiff out of the chair as soon as Plaintiff calms down.  Plaintiff responds, "all right," twice, and then groans.  While waiting for the nurse, someone in the background mentions something about Plaintiff having a little blood somewhere or from something.  Plaintiff is able to respond when officers ask him his birth date.  An officer asks Plaintiff if he has been arrested before.  He does not respond.  Plaintiff asks if he can have something to blow his nose.  He asks to blow his nose a second time.  Plaintiff does not respond to the question and then says "Ain't that a bitch, ain't that a bitch."

An officer asks a male nurse to check the restraint bands and tells the nurse that Plaintiff was pepper sprayed.  The nurse asked Plaintiff what he did to be put in the restraint chair.  Plaintiff says something, but the videotape does not pick it up.  The nurse performs a cursory examination of Plaintiff and states that Plaintiff "looks ok to me."  The nurse does not touch Plaintiff in any way, or palpate any regions of Plaintiff's chest or abdomen.  The nurse and the officers walk out and then the videotape ends.

### C.  Subsequent events

The events that took place after Plaintiff was restrained are contested.

Plaintiff stated that the first nurse interaction he had was "down the line" and not when the officers initially put him in the restraint chair.  (Defs.' Mot. for Summ. J., Ex. B, Johnson Dep. at 150.)

Plaintiff stated that he was in the restraint chair for one or two hours before someone checked on him.  (*Id.* at 151.)  But he does not remember whether a nurse came in to check on him.  (*Id.*)  After spending that time in the chair, Plaintiff stated that four officers–the named Defendants–came into his cell, took him out of the restraint chair, and

4

beat him.  (*Id.* at 152.)   Plaintiff stated that Kozlowski orchestrated the beating as Defendants surrounded him in the cell.  (*Id.* at 154.)  He stated that one of the officers pushed him into the wall and then they all started beating him–hitting him, stomping on him, kicking, and punching him–until he was unconscious.  (*Id.* at 154-157.)

Plaintiff did not remember anything after he passed out.  (*Id.* at 159.)  When he awoke the next day, on September 17, 2006, he was back in the restraint chair.  (*Id.* at 160.) He knew it was the next day because he recognized that the staff had changed.  (*Id.*) Someone eventually rolled Plaintiff, still in the restraint chair, into a different cell, and then tipped the chair over so that Plaintiff fell out.  (*Id.* at 161.)  After Plaintiff fell on the floor he stated that he started shaking and felt as if he was experiencing a seizure.  (*Id.* at 162.) He felt as if he was going to die and started screaming.  (*Id.*)

A little while later, Kozlowski came into Plaintiff's cell and told him that there was nothing wrong with him and that the officers "w[h]ooped [his] ass" the night before.  (*Id.*)

Roughly four hours after this interaction with Kozlowski, Plaintiff stated that a nurse, Debbie Yacko, visited him, examined him, and gave the order to have someone take Plaintiff to the hospital "immediately."  (*Id.*)  The records of that examination indicate that Yacko found that Plaintiff was unable to take deep breaths, was complaining of discomfort, and presumably, complaining of pain in his rib area.[3]  (Pl.'s Resp., Ex. 2.)

Plaintiff was in the hospital for only a few hours that day.  (Defs' Mot. for Summ. J., Ex. B, Johnson Dep. at 83.)   The hospital staff took x-rays of Plaintiff's chest and

---

[3]The report reads "c/o pain in L . . . rib area." The Court presumes the c/o means "complains of.'

5

determined that he had broken ribs.[4] (*Id.* at 165.) The staff prescribed him some medicine. (*Id.*) After the hospital released him, he went back to the Macomb County Jail. (*Id.* at 83)

Plaintiff named Lawrence, Kozlowski, Thompson, and Costanzo as the officers that caused his injuries. (*Id.* at 84.) Plaintiff identified them after the beating, when he was able to see the officers' name tags when they were performing duties around the jail. (*Id.* at 85.)

### D. Defendants' version of events

Defendants offer a version of the events that differs from Plaintiff's version. They state that Plaintiff was incarcerated at 5:50 p.m., put into the restraint chair five minutes later, checked on by a jail guard every fifteen minutes and by a nurse every thirty minutes, and was removed from the restraint chair at 8:50 p.m. (Defs.' Mot. for Summ. J. at 4; Ex. I, Jail log.)[5]

Defendants claim that "[m]oments after his incarceration, [Plaintiff] became combative and unruly in his cell." (Defs.' Mot. for Summ. J. at 3.) Defendants also claim that the "videotape demonstrates [Plaintiff's] defiant behavior and refusal to comply with directives." (*Id.*)

Thompson recognized himself in the videotape showing Plaintiff leaving a patrol car and entering the Macomb County Jail. ( Pl.'s Resp., Ex. 11, Thompson Dep. at 11.)

---

[4]Defendants allege that Plaintiff's rib injury was preexisting. They support this allegation with a radiologist note suggesting that Plaintiff has a lower left rib repaired with wire. (Defs.' Mot. for Summ. J., Ex. P.)

[5]In their responses to Plaintiff's interrogatories, Defendants state that they removed Plaintiff from the restraint chair at 1:04 a.m., not 8:50 p.m. the night before. (Pl.'s Resp., Ex. 5 at 4.)

6

Thompson stated that Kozlowski was also there and that Kozlowski was the officer that told him to get the restraint chair.  (*Id.* at 11, 15.)  Thompson did not know why the restraint chair was used.  (*Id.* at 15.)  Thompson added that he did not injure Plaintiff's ribs and that he did not know how Plaintiff injured his ribs.  (*Id.* at 20-21.)  Defendants allege that Thompson left work when his shift was terminated at 11:30 p.m. on September 16, 2006 and that he was not at work the following day.  (Defs.' Mot. for Summ. J. at 19.)

Kozlowski stated that Plaintiff's "general passive resistance"–that is, his inability to comply with orders, resulted in the officers putting him in the restraint chair.  (Pl.'s Resp., Ex. 4, Kozlowski Dep. at 25.)  Kozlowski detailed the reasons why the officers restrained Plaintiff, but Plaintiff never received a copy of this report.  (*Id.* at 45.)

Kozlowski stated that the tape of Plaintiff being restrained would show him being assaultive and combative when he arrived at the police station.  (*Id.* at 54.)  But upon viewing the tape, Kozlowski admitted that  Plaintiff was not assaultive or combative.  (*Id.* at 57.)

On September 16, 2006, at 11:30 p.m., Defendants state that  the jail changed staff and Kozlowski went home for the evening.  (Defs.' Mot. for Summ. J. at 4.)  At 1:04 a.m., on September 17, 2006, the next morning, Defendants state that Plaintiff was moved to a different cell and that he did not complain of any injuries at that time.  (*Id.*; Ex. I.)

Later that day, around 1:56 p.m., the jail staff booked and processed Plaintiff.  (Defs.' Mot. for Summ. J. at 5; Ex. J.)  It was at that time, Defendants allege, that Plaintiff first complained of left side chest pain.  (*Id.*)  A nurse examined him at 2:20 p.m. and noticed that he had pain in his rib area and difficultly taking deep breaths; and he was then taken to the hospital around 6 p.m. and returned two hours later.  (*Id.*; Pl.'s Resp., Ex. 2.))

7

Defendants point out that Plaintiff has presented inconsistent statements about what happened on the arresting scene and regarding prior rib injuries. (Defs.' Mot. for Summ. J. at 7.) Plaintiff does not dispute that his "account has not always been rigidly consistent." (Pl.'s Resp. at 7.)

## II.   Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

8

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.   Analysis

Defendants have brought this motion for summary judgment on Plaintiff's excessive force and failure to provide medical treatment claims.  They argue that the doctrine of qualified immunity shields them from liability and requires the Court to grant their motion. For Defendants to succeed with this argument they must show that no genuine issue of material fact exists as to whether they violated Plaintiff's constitutional rights and must address whether Plaintiff's constitutional rights were clearly established at the time of Defendants' conduct.

### A.  Defendants are not entitled to qualified immunity

Defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity shields "'government officials performing discretionary functions'" from "'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). At the summary judgment stage, the Court is required to view the facts in the light most favorable to the non-moving party, Plaintiff in this case. Viewing the facts in that light, the Court must then determine "whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue 'was clearly established at the time of defendant's alleged misconduct.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and citing *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004)); *see Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008 (stating that the court "[a]ccept[s] [the plaintiff's] testimony as true and giv[es] his evidence the benefit of all reasonable inferences.")

### 1.  Plaintiff has created a genuine issue of material fact on his excessive force claim

Plaintiff alleges that Defendants beat him in violation of his Fourth Amendment rights. Pretrial detainees, arrested without a warrant, and prior to a probable-cause hearing are afforded protection under the Fourth Amendment against objectively unreasonable force. *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010). "The Fourth Amendment only permits an officer to use reasonable force to protect himself from a reasonable threat." *Id.* Qualified immunity therefore does not protect a police officer that continues to beat an

arrestee after that arrestee has been neutralized.  *Id.*  (quotation marks and citation omitted.)  In excessive force cases, "the plaintiff has the burden of producing facts during the discovery process" to support excessive force.  *Grawey*, 567 F.3d at 309.  A plaintiff usually accomplishes this feat through his own testimony, the defendants' testimony, and witness testimony.  *Id.*

At the time of the incident complained of here, Plaintiff was a pretrial detainee who had been arrested without a warrant and awaiting a probable-cause hearing; his excessive force claim therefore is governed by the Fourth Amendment's reasonableness standard.  *See id.*

Here, Plaintiff's testimony has created a genuine issue of material fact.  Plaintiff has alleged that Defendants beat him when he was in a holding cell, neutralized.  Plaintiff has presented further evidence that he was short of breath, had tenderness in his rib area, and there is some evidence that his ribs were indeed broken.

Although Defendants contest Plaintiff's injuries, the extent of those injuries, and Plaintiff's evidence, a plaintiff may allege an excessive force claim and survive a summary judgment motion "even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage."  *Miller v. Sanilac County*, 606 F.3d 240, 252-4 (6th Cir. 2010) (reversing a district court's granting of summary judgment on an excessive force claim where the plaintiff alleged that the officer slammed the plaintiff into a vehicle when the arrestee posed no immediate threat to safety and the arrestee had not attempted to escape.")  The *Sanilac County* court did note that the allegations came quite close to the "scintilla of evidence" excessive force standard that the court had "previously

found to be insufficient to survive summary judgment." *Id.* at 253. That court ultimately held that a jury could have found an officer used excessive force if he slammed the plaintiff into a vehicle. *Id.* at 253-54. Because the Court finds that this amount of evidence, although contested, is greater than the evidence presented in *Sanilac County*, it would be error for the Court to find that Plaintiff has not created a fact issue as to a constitutional violation as to excessive force.

### a. Plaintiff's rights were clearly established at the time of the alleged beating

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Phillips v. Roane County*, 534 F.3d 531 (6th Cir. 2008) (quotation marks and citations omitted).

Here, Plaintiff's rights were clearly established at the time of the alleged beating because he was neutralized in a cell and in a restraint chair. *See Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008) (holding, "Fourth Amendment excessive-force inquiries require a careful balancing of the force used against the countervailing governmental interests at stake."). The Sixth Circuit has held that there is "simply no governmental interest in continuing to beat an arrestee after he has been neutralized, nor could a reasonable officer think there is." *Lawler*, 268 F. App'x at 387. Because arrestees have a clearly established right to be free from "gratuitous force in a booking room–beyond the point at which any threat could have been reasonably perceived," Plaintiff's rights were

12

established at the time of the beating, and no reasonable officer could view the situation

differently.  *Lawler*, 268 F. App'x at 388.

### 2. Plaintiff has created a genuine issue of material fact on his failure to provide adequate medical care

The Fourteenth Amendment gives pretrial detainees the right to receive adequate

medical care.  *Phillips*, 534 F.3d at 545.  An official violates this constitutionally protected

right when "the circumstances are clearly sufficient to indicate the need of medical attention

for injury or illness."  *Id.* (quotation marks and citations omitted.)  Put another way, "[t]he

detainee's right is violated when prison doctors or officials are *deliberately indifferent* to the

prisoner's serious medical needs."  *Jerauld ex rel. Robinson v. Carl*, No. 09-5714, 2010 WL

5439796, at *5 (6th Cir. Dec. 30, 2010) (emphasis in original; quotation marks and citations

omitted).

To establish the right to adequate medical care, a plaintiff must prove two

components–one objective, the other subjective.  *Id.*

The objective component requires a plaintiff "to allege facts showing that the medical

need at issue [wa]s sufficiently serious."  *Id.*  (internal quotation marks and citation omitted.)

A plaintiff can show that a medical need was sufficiently serious by alleging facts that "show

an obvious need for medical care that laymen would readily discern as requiring prompt

medical attention by competent health care providers."  *Blackmore v. Kalamazoo County*,

390 F.3d 890, 898 (6th Cir. 2004).

The subjective component requires a plaintiff to "allege facts which, if true, would

show that (1) the official being sued subjectively perceived facts from which to infer

13

substantial risk to the prisoner, (2) that he did in fact draw the inference, and (3) that he then disregarded that risk." *Id.* (internal quotation marks and citation omitted.)  A plaintiff can satisfy the subjective component by showing that the officer or official was deliberately indifferent to the plaintiff's serious medical needs. *Cain v. Irvin*, 286 F. App'x 920, 926 (6th Cir. 2008 (citation omitted). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Jerauld ex rel. Robinson*, 2010 WL 5439796, at *5 (internal quotation marks and citations omitted.)  Against a prison official, a court may "infer from circumstantial evidence [that] a prison official had the requisite knowledge." *Id.* (citation omitted.)   Deliberate indifference therefore "is the equivalent of recklessly disregarding [a] risk." *Id.* (citation omitted).

Plaintiff has alleged facts sufficient to satisfy the objective and the subjective components of this claim.  Plaintiff has stated that Defendants beat him, caused an abrasion over his eye, and broke his ribs.  Accepting these allegations as true, Plaintiff has satisfied the objective component of this claim.  If Defendant beat him to the extent Plaintiff alleged, then even a layman would know that the harm caused would require immediate medical attention.  The nurse's observations add to Plaintiff's claim–she observed and noted that he had difficulty breathing and had pain in his rib area.

Plaintiff has also stated that he did not receive medical treatment until the afternoon of the day following the alleged beating.  Here then, Plaintiff has satisfied the subjective component of his claim either by demonstrating a direct disregard for the risk or by demonstrating deliberate indifference.  From Plaintiff's evidence, a jury could infer that

14

Defendants' beating of Plaintiff and subsequent not supplying medical treatment to him until the afternoon following, satisfies the subjective component of this claim.  By inference, Defendants could have either intentionally disregarded the effect of their beating on Plaintiff.  Likewise, a jury could infer that Defendants were deliberately indifferent by not noticing and providing the required medical attention after they beat him.  This claim is similar to the Sixth Circuit's subjective component analysis presented in *Cain v. Irvin*. There, the Sixth Circuit found that the plaintiff satisfied the subjective component by alleging that the officer failed to provide medical care to her for over two hours after she alleged that she indicated to him that she was in "great pain and that she wished to go to the hospital."  *Id.* at *5.  The Sixth Circuit assumed Plaintiff's version of events as true, and found that she raised a jury question whether the officer was deliberately indifferent to her medical needs."  *Id.*

### a. Plaintiff's rights were clearly established at the time of the alleged failure to provide adequate medical care

"[T]he Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established."  *Phillips*, 534 F.3d at 545 (citation omitted, alteration in original).  Plaintiff's right to medical care while in the holding cell was clearly established.

## IV. Conclusion

For the reasons stated, Plaintiff has alleged facts and circumstances from which a jury could find that Defendants violated Plaintiff's rights to be free from excessive force and have adequate medical care.  These alleged constitutional violations occurred at times

15

when Plaintiff's rights were clearly established.  The Court therefore finds that Defendants

are not entitled to qualified immunity and the Court therefore DENIES Defendants' motion

for summary judgment.

                s/Nancy G. Edmunds_____

                Nancy G. Edmunds

                United States District Judge

Dated:  February 14, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record
on February 14, 2011, by electronic and/or ordinary mail.

                s/Carol A. Hemeyer_____

                Case Manager